Ruffin, C. J.
 

 The Court finds no reason for disturbing the decree. In respect of the personal estate, the plaintiffs cannot have any decree against the defendant. The negroes, with their numerous increase, have been delivered to the husband, and he has also settled the accounts with the guardian and received the balance due on It, and given a receipt for it as such. It is not necessary to cite authorities, that an account stated in writing, and settled and signed by the parties, is a bar to a bill for another account. If the plaintiffs state the settlement in the bill, they cannot ask to have it opened, but for some fraud, omission, or mistake pointed out. If the bill take no notice of the settlement, but is simply for an account, in a case, in which a bill for an account lies, it follows, that the defendant can adduce the settlement and shewthereby that the parties have already accounted, and therefore ought not to be compelled to do so again. The difference is, that when the defendant sets up this defence, the rule is, that he must state upon his oath, that the account as settled is just and true ; and in that case it is conclusive, unless impeached upon one of the grounds mentioned. For fair settlements, like other contracts, ought
 
 *144
 
 to be binding.
 
 Heve the accounts were stated, signed
 
 and settled, and there is nothing to impeach them ; for the bill does not even notice the settlement. The final account refers, upon its face, to those before returned and they must have been known to the husband. The defendant says that he in fact had them and examined them carefullj''; and he further states, positively, that the whole account was just and true. There is no grouud, therefore, on which that settlement can be disregarded.
 

 The Court cannot forbear expressing a decided disapprobation of the loose and mischievous practice, adopted in this case, of decreeing the sale of an infant’s land, upon
 
 ex parle
 
 affidavits offered to the Court, without any reference to ascertain t.he necessity and propriety of the sale, and the value of the property, so as to compare the price with it. The Court ought not to act on mere opinions of the guardian or witnesses, but tlje material facts ought to be ascertained and put upon the record, either by a report of the master or the finding of an issue
 
 ;
 
 and after a sale it ought to appear in like manner to be for the benefit of the infant to confirm it. Otherwise there is great danger of imposition on the Court and much injury to infants. In the case before us, if it were admitted that the ward lost by the sale of her land, it is not seen, that the guardian did more than err in opinion, as to the infant’s interest; for the facts stated -in the petition do not appear to be untrue ; and there is no evidence of an effort to prevent competition at the sale or before. The only prejudice alleged in the bill is, that the land was sold too low. On that point the guardian or the witnesses made no representation. It was incumbent on the Court to direct an enquiry, as to the suitableness of the sale at the price, taking into view the income from the land, the ward’s age, and the condition of her estate. Certainly, a guardian is not to answer for error in the Court in those respects; for he cannot undertake to set himself above
 
 *145
 
 the Court, whose advice he asks. To make him responsible, if he be so at all, for a loss to the ward, something more than a loss and an error of a Court must be made to appear. It ought, at least, to be established, that he practised a deception on the Court by false allegations and false evidence, or by industriously concealing material facts. However, it is not our purpose at present to lay down any rule as to the liability of guardians, for losses
 
 to
 
 wards from sales of their land. ' It will be sufficient to do so, when a case of such injury shall come up. The plaintiffs do not establish any thing’ like a previous design of the defendant to buy the land; and they fail to render it even probable, that it was not the ward’s interest to confirm the sale that was made, rather than not make one at all. It is true, there is some difference of opinion, about the value of
 
 the
 
 land. But suppose it to be’worth $600, or a little more, there would still not be such a disparity between the price and value as would induce the Court to annul a contract
 
 inter partes.
 
 This case stands on ground even higher than that. The right of rejecting the sale is reserved to the Court; but instead of doing so, it confirms it, and thereby holds the purchaser hound. It would be hazardous to impeach confirmed judicial sales, upon the ground of inadequacy of price ; and, if it can be done in any case, it must undoubtedly be a very strong one of deceitful practice on the Court. Without commenting minutely on the evidence here, it will be sufficient to say, that it produces a decided impression,. that, under the circumstances, it was the interest of the ward, that the sale should have been made at the price given, rather than not sell at all; and that, even if the land were worth more intrinsically, it is not probable, owing to its condition and situation, that more could have been bad for it in any reasonable time. The proceeds of sale were almost indispensable to the infant, in the state of her property. The land yielded no profits, and would
 
 *146
 
 not, without an outlay beyond the power of the owner. If not sold, it would have been chargeable for taxes, and at the end of her pupilage, would still have been in a wild and waste state. On the other hand, it has yielded f500, and compound interest thereon for about fourteen years : altogether, upwards of $1100. Besides, there were debts, then due, exceeding $200, and others, afterwards ascertained, to a greater amount; and for the discharge of them, and the education of the ward, there was nothing but the negroes. During the same period, they have yielded above $1500, in hires, and have more than doubled in number. So that it is plain that she would have suffered more loss by a sale of negroes for the payment of her debts,
 
 besides
 
 being cut off from resources for nurture and education. The Court, therefore, must declare, that the sale of the land was not procured by the defendant in bad faith, but that, under the circumstances* it was a discreet and proper act.
 

 The bill also insists on a liability of the defendant, because he did not keep and have settled on the plaintiff, Mrs. Harrison, as much of the personal property, as would have been of the value of
 
 $500,
 
 to go as real estate. This is founded on the provision of the Act of 1827, which requires the Court to set apart as much of one kind of property as will be a substitute for that of the other kind sold, and enacts that the portion set apart shall go- as that sold would have done, until the equitable owner shall make a disposition of it,
 
 that will change its
 
 character. No doubt it was the duty of the Court of Equity to have complied with these provisions. Perhaps, also, the guardian might have witheld as much of the personal property from the husband of his infant ward, and insisted on its being settled as real estate. It is not necessary to say how that would be, as it is not the question here. The question before us is, whether the husband, by joining his wife with him, can bring a hill to compel the guardian to make good this sum out of
 
 *147
 
 his proper goods, when the husband has in his own hands the whole estate, out of which the settlement ought to be made. Undoubtedly, that much of the personal estate is, or ought to be considered, as land, between the husband and wife, and between her personal representative and heir. Why does not the husband set up a sufficient fund and settle it for that purpose ? If he will not, the wife has a right to insist on it by her bill, filed by a next friend. But, clearly, they cannot charge the present defendant with that sum, when he delivered the whole estate to the husband, and he now has it. Whether he could be made liable by the wife, upon the insolvency of the husband, may admit of more doubt — though it would seem hard that he should, as the Court omitted to designate a fund for the purpose. But, if he could be reached by the wife ultimately, he assuredly cannot be on the bill of the husband and wife, and while the husband has the fund itself, and is, in respect thereto, the person primarily liable.
 

 Per Curiam.
 

 Decree affirmed, with costs.